# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| KELLY HICKS, *individually and as next friend of J.E.,* | |
| **Plaintiffs,** | CIVIL ACTION NO. |
| **v.** | **5:16-cv-00447-TES** |
| DAN KILGORE, *et al.,* | |
| **Defendants.** | |

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Presently before the Court are the parties' Cross-Motions for Summary Judgment [Docs. 47, 54].[1] For the reasons that follow, Defendants' Motion for Summary Judgment [Doc. 47] is **GRANTED**, and Plaintiffs' Amended Motion for Partial Summary Judgment [Doc. 54] is **DENIED**.

## FACTUAL BACKGROUND

On December 3, 2014, JE, a nine-year-old autistic student at an Upson County, Georgia elementary school, witnessed students at a nearby middle school evacuating due

---

[1] Plaintiffs filed two nearly identical motions for summary judgment: one for total summary judgment [Doc. 49] and the other for partial summary judgment [Doc. 54]. Because the motions are substantially similar, the Court considers only Plaintiffs' Amended Motion for Partial Summary Judgment [Doc. 54]. The Court will, however, consider attachments to the original motion [Doc. 49] for the purposes of this ruling.

to a bomb threat written on the wall in one of the middle school's bathrooms. [Doc. 47-1, ¶ 1; Doc. 54-2, ¶ 2].[2] On December 8, 2014, JE decided to emulate this behavior and wrote "bone thrat [sic] 1PM" on the wall in a bathroom stall at his elementary school. [Doc. 47-1, ¶ 2]. JE told a student hall monitor that he discovered the bomb threat, and they both went to tell a teacher. [*Id.* at ¶ 3]. The teacher told the school's administrative personnel, who then called 9-1-1. [*Id.* at ¶ 4].

Defendants Casey Clark and David Walker, investigators for the Upson County Sheriff's Office, responded to the call and went to the elementary school to investigate the bomb threat. [*Id.* at ¶ 5]. Upon arriving at the school, Defendants Clark and Walker requested to speak with JE because he discovered the bomb threat. [*Id.* at ¶ 6; Doc. 50-3, Clark Dep., p. 10:15-21; Doc. 50-4, Walker Dep., p. 10:18-23]. School officials were present during the subsequent questioning, but Ms. Hicks, JE's mother, was not. [Doc. 47-1, ¶¶ 7, 8]. Defendants Clark and Walker did not read JE his *Miranda* rights during the questioning. [*Id.* at ¶ 8]. School officials did not inform Defendants Clark and Walker that JE is autistic. [*Id.* at ¶ 9]. During the questioning, JE admitted that he wrote the bomb threat on the bathroom wall. [*Id.* at ¶ 10].

---

[2] Plaintiffs' Response to Defendants' Statement of Material Facts [Doc. 51-1] is misnumbered and omits responses to two of Defendants' facts; thus, the Court experienced difficulty determining the specific facts to which Plaintiffs object. To the extent Plaintiff does not clearly object to Defendant's facts, they are deemed admitted. *See* LR 56, MDGa.

After JE's confession, Defendants Clark and Walker stopped questioning JE and decided to transport him to the Upson County Sheriff's Office to question him further and to complete routine paperwork. [*Id.* at ¶ 12; Doc. 50-4, Walker Dep., p. 13:16-25]. At around 1:45 p.m., approximately one hour and 45 minutes after Defendants Clark and Walker arrived at the school, the school principal called JE's mother Ms. Hicks, informed her of the incident, and told her she could pick JE up at the Sheriff's Office. [Doc. 47-1, ¶ 11; Doc. 51-1, ¶ 11; Doc. 49-2; Doc. 50-1, Hicks Dep., p. 20:3-16]. Defendants Clark and Walker transported JE to the Sheriff's Office in the back of Defendant Walker's patrol car, but they never handcuffed him. [Doc. 50-3, Clark Dep., pp. 14:21—16:11].

When they arrived at the Sheriff's Office, Defendant Clark read JE his *Miranda* rights, which JE waived. [Doc. 47-1, ¶ 17]. Defendant Clark testified that he asked JE whether he understood the *Miranda* waiver, and JE said he did. [Doc. 50-3, Clark Dep., p. 36:9-23]. Defendant Clark then questioned JE further, and JE provided a statement regarding the bomb threat. [Doc. 47-1, ¶ 19]. Defendant Clark testified that it did not occur to him that JE had autism until Ms. Hicks arrived to pick JE up and mentioned it. [Doc. 50-3, Clark Dep., pp. 35:19—36:5].

Defendant Clark filled out an incident report, which noted in a box entitled "CHARGES" that JE committed terroristic threats and acts in violation of Ga. Code Ann.

§ 16-11-37.[3] [Doc. 49-2]. The same was noted on a juvenile complaint form dated December 12, 2018. [Doc. 49-5]. The Upson County Sheriff's Office referred the matter to the juvenile court as one for a "child in need of services," but the Sheriff did not file formal charges against JE. [Doc. 62, Kilgore Dep., p. 15:10-21]. The juvenile court judge later ordered JE to write three apology letters. [Doc. 47-1, ¶ 24].

Plaintiffs now bring the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging that Sheriff Dan Kilgore and Defendants Clark and Walker violated JE's Fourth and Fifth Amendment rights, and both Plaintiffs' Fourteenth Amendment rights. Specifically, Plaintiffs allege in Count I of their Amended Complaint that Defendants Clark and Walker violated Ga. Code Ann. § 15-11-502(a) (in accordance with policies promulgated by Defendant Kilgore) and thus violated JE's procedural due process rights and Ms. Hick's substantive due process rights. [Doc. 13, ¶¶ 21, 22]. Ga. Code Ann. § 15-11-502 states:

> (a) A person taking an alleged delinquent child into custody, with all reasonable speed and without first taking such child elsewhere, shall:
>
>> (1) Immediately release such child, without bond, to his or her parent, guardian, or legal custodian upon such person's promise to bring such child before the court when requested by the court;
>>
>> [. . . or]

---

[3] Ga. Code Ann. § 16-11-37 states in relevant part that "[a] person commits the offense of a terroristic threat when he or she threatens to: (A) commit any crime of violence; (B) release any hazardous substance; or (C) burn or damage property. [ ] Such terroristic threat shall be made: . . . With the purpose of causing the evacuation of a building, place of assembly, or facility of public transportation."

(3) Bring such child immediately before the juvenile court or promptly contact a juvenile court intake officer. The court or juvenile court intake officer shall determine if such child should be released or detained. All determinations and court orders regarding detention shall comply with the requirements of this article and shall be based on an individual detention assessment of such child and his or her circumstances.

(b) Notwithstanding subsection (a) of this Code section, a law enforcement officer may detain an alleged delinquent child for a reasonable period of time sufficient to conduct interrogations and perform routine law enforcement procedures including but not limited to fingerprinting, photographing, and the preparation of any necessary records.

In Count II, Plaintiffs allege that Defendants Clark and Walker violated Ga. Code Ann. § 16-3-1 and falsely arrested JE without probable cause in accordance with policies set by Defendant Kilgore. [Doc. 13, ¶¶ 26-34]. Ga. Code Ann. § 16-3-1 states that "[a] person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime."

In Count III, Plaintiffs allege that Defendants Clark and Walker violated JE's pre-deprivation due process and substantive due process rights by failing to have his parent(s) present during questioning and failing to Mirandize him. [*Id.* at ¶¶ 35-41]. Plaintiffs also contend that such conduct "shocks the conscience," and that Defendants Clark and Walker did this in accordance with Defendant Kilgore's policies. [*Id.* at ¶¶ 37, 38].

Finally, Plaintiffs allege in Count IV that Defendants violated Ga. Code Ann. § 15-11-502 and Art. I, Sec. I, Para. XVI of the Georgia Constitution, which states that "[n]o

person shall be compelled to give testimony tending in any manner to be self-incrimination." [Doc. 13, ¶¶ 42-45].

## DISCUSSION

A. <u>**Standard of Review**</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Banks Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal citations omitted). The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331. However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## B.   <u>Qualified Immunity</u>

Defendants assert qualified immunity on all of Plaintiffs' claims. An officer is entitled to qualified immunity when he acts within his discretionary authority and the

conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Manners v. Cannella*, 891 F.3d 959, 967-68 (11th Cir. 2018) (quoting *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015)).

The burden first lies with the defendant to show that he acted "within his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once this is shown, the burden shifts to the plaintiff to prove that qualified immunity is inappropriate. *Id*. The plaintiff satisfies this burden if the facts, taken in the light most favorable to them, show that the officer's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To be clearly established, the constitutional violation must be "apparent" when viewed "in light of pre-existing law" from the United States Supreme Court, Eleventh Circuit Court of Appeals, or Georgia Supreme Court, such that the offending officer has "fair warning that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

**C.      Plaintiffs' Due Process Claims**

Plaintiffs' first cause of action is asserted against all Defendants for their alleged violation of both Plaintiffs' due process rights. Specifically, Plaintiffs allege that Defendants violated Ga. Code Ann. § 15-11-502, which states in pertinent part:

(a) A person taking an alleged delinquent child into custody, with all reasonable speed and without first taking such child elsewhere, shall:

(1) Immediately release such child, without bond, to his or her parent, guardian, or legal custodian upon such person's promise to bring such child before the court when requested by the court;

[. . . or]

(3) Bring such child immediately before the juvenile court or promptly contact a juvenile court intake officer. The court or juvenile court intake officer shall determine if such child should be released or detained. All determinations and court orders regarding detention shall comply with the requirements of this article and shall be based on an individual detention assessment of such child and his or her circumstances.

(b) Notwithstanding subsection (a) of this Code section, a law enforcement officer may detain an alleged delinquent child for a reasonable period of time sufficient to conduct interrogations and perform routine law enforcement procedures including but not limited to fingerprinting, photographing, and the preparation of any necessary records.

Plaintiffs claim that Defendants Clark and Walker violated subsection (a) of this statute by taking JE to the Upson County Sheriff's Office and, in doing so, infringed on JE's procedural due process rights and Ms. Hicks' parental substantive due process rights. [Doc. 13, ¶ 21].

1.     Defendants did not violate Ga. Code Ann. § 15-11-502.

Plaintiffs claim that Defendants Clark and Walker violated Ga. Code Ann. § 15-11-502(a) by taking JE to the Upson County Sheriff's Office rather than immediately releasing him to Ms. Hicks or immediately taking him to juvenile court. Subsection (b), however, provides an exception to subsection (a) and allows officers to "detain an alleged delinquent child for a reasonable period of time sufficient *to conduct interrogations* and

perform routine law enforcement procedures including . . . *the preparation of any necessary records*." Ga. Code Ann. § 15-11-502(b) (emphasis added). Defendants Clark and Walker's conduct in transporting JE to the Upson County Sheriff's Office for further questioning and to complete an investigation report falls squarely within the exception in subsection (b). Thus, the Court does not find that Defendants acted illegally by transporting JE to the Sheriff's Office rather than releasing him to Ms. Hicks or the juvenile court.

        2.      <u>Defendants did not violate Plaintiffs' due process rights</u>.

Plaintiffs also allege that Defendants Clark and Walker violated JE's procedural due process rights and Ms. Hicks' substantive due process "parental rights in her child" by transporting JE to the Sheriff's Office in violation of Ga. Code Ann. § 15-11-502. [Doc. 13, ¶ 21]. However, the violation of a state statute cannot, in itself, give rise to a Section 1983 claim. *See Trujillo v. Williams*, 465 F.3d 1210, 1214 n.2 (10th Cir. 2006) ("To the extent that [the plaintiff] seeks relief for alleged violations of state statutes . . ., he has stated no cognizable claim under § 1983, which establishes a cause of action only for deprivation of rights secured by the Constitution or federal law."); *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992) (Section 1983 "does not provide a remedy for abuses that do not violate federal law."). Moreover, "[t]here is no federal right to not be arrested in violation of state law." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002).

Plaintiffs offers no legal basis for their allegation that "[t]he failure of Defendants Clark and Walker to provide the procedural safeguards of O.C.G.A. § 15-11-502(a) violated both [Ms. Hicks and JE's] rights to procedural due process and . . . substantive due process" under federal law. [Doc. 13, ¶ 21]. Thus, because this cause of action fails as a matter of law, Defendants are entitled to summary judgment.

## D.  **Plaintiffs' False Arrest Claims**

In her second cause of action, Plaintiffs claim that Defendants Clark and Walker arrested JE in violation of Ga. Code Ann. § 16-3-1, which states: "A person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime." Plaintiffs further allege that Defendants Clark and Walker acted in accordance with a policy implemented by Defendant Kilgore in making the arrest in violation of Ga. Code Ann. § 16-3-1. Plaintiffs also claim that Defendants Clark and Walker lacked arguable probable cause to arrest JE.

### 1.  Ga. Code Ann. § 16-3-1

Plaintiffs claim that Defendants violated Ga. Code Ann. § 16-3-1 when they arrested JE. However, as previously discussed, the violation of a state statute cannot, by itself, establish the violation of a federal constitutional right. *Knight*, *supra*. Plaintiffs present no case law, federal statute, or constitutional provision—and diligent research by the Court reveals none—stating that a police officer violates federal statutory or constitutional law by arresting a child under the age of 13 for a crime. Moreover, the

Georgia Supreme Court explicitly held that Ga. Code Ann. § 16-3-1 "provides neither a constitutional nor an unwaivable proscription on the prosecution of persons under 13 years old." *Adams v. State*, 707 S.E.2d 359, 362 (Ga. 2011).

Furthermore, Section 16-3-1 cannot mean that a child under the age of 13 can never be *arrested*, especially since "[t]here is no authority that [the statute] provides immunity from criminal prosecution." *Adams v. State*, 707 S.E.2d 359, 362 (Ga. 2011). Moreover, Plaintiffs' interpretation of the statute cannot be reasonably reconciled with Ga. Code Ann. § 15-11-501, which makes it lawful for a police officer to take "an alleged delinquent child" into custody "pursuant to the laws of arrest." Plaintiffs' reading of Section 16-3-1 would significantly limit the applicability of Section 15-11-501 and render it completely meaningless for children under the age of 13. No Georgia court has ever interpreted these statutes to work in this fashion. Accordingly, Plaintiffs cannot sustain a claim under Section 1983 for any of the Defendants' alleged violations of Ga. Code Ann. § 16-3-1.

2.    Arguable Probable Cause

Plaintiffs also claim that Defendants Clark and Walker arrested JE without probable cause. The Court assumes, without deciding, that the officers did actually arrest JE (in the strictly legal sense) and finds that they had at least arguable probable cause to do so.

Generally, an arrest must be supported by probable cause to be reasonable under the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 499 (1983) (plurality opinion).

However, when a police officer asserts qualified immunity against a claim for false arrest, the question is not whether he had *actual* probable cause to arrest the plaintiff, but whether he had *arguable* probable cause to do so. *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010). Arguable probable cause exists in the context of an arrest when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.*

> a. <u>JE's Confession</u>

Defendants argue that JE's confession during his questioning at the school gave them actual probable cause to arrest JE. Plaintiffs, on the other hand, appear to contend[4] that because Defendants Clark and Walker allegedly coerced JE's confession, they could not rely on it for the requisite probable cause to arrest. However, the Supreme Court has clearly established that the Fifth Amendment right against self-incrimination is only violated if incriminating statements are used against the suspect in a criminal trial. *See generally*, *Chavez v. Martinez*, 538 U.S. 760 (2003) (plurality opinion). Moreover, the *Miranda* exclusionary rule—which is the premier method by which coerced confessions are dealt with under the Fifth Amendment—is merely prophylactic in nature and is not meant to give rise to a civil cause of action. *See* Section E, *infra*. Put simply, coercive

---

[4] Plaintiffs' arguments on this point are not the model of clarity. The Court has done its best to decipher the legal and factual bases of their claims.

interrogations are remedied by the court's invocation of the *Miranda* exclusionary rule during a criminal trial and not by civil lawsuits.

JE, like the plaintiff in *Chavez*, was not charged with a criminal offense, nor was he ever prosecuted in a criminal trial. Therefore, a civil claim for his allegedly coercive interrogation will not lie under the Fifth Amendment, and Plaintiffs cannot attempt to transform such a claim into—or bootstrap it onto—a Fourth Amendment false arrest claim. Thus, their argument that JE's allegedly coerced confession cannot form the basis for probable cause to arrest is without merit.

In the context of this Section 1983 claim, JE's confession provided sufficient probable cause for Defendants to arrest him. Once JE confessed to writing the bomb threat on the school's bathroom wall, Officers Clark and Walker had actual, and not merely arguable, probable cause to arrest JE based on the confession. Thus, JE's claim for false arrest under Section 1983 fails as a matter of law.

### b. *Ga. Code Ann. § 16-3-1 as an affirmative defense*

Plaintiffs also contend that Ga. Code Ann. § 16-3-1 presents an affirmative defense to JE's arrest and that Defendants Clark and Walker's awareness of Ga. Code Ann. § 16-3-1 negated any probable cause to arrest JE.

As previously discussed, Ga. Code Ann. § 16-3-1 states, "A person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime." The Georgia Supreme

Court explained that this statute is an affirmative defense designed to safeguard "the social desirability of protecting those not more than 12 years of age from the consequences of criminal guilt," but it does not create an immunity from criminal prosecution. *Adams*, 707 S.E.2d at 362. Moreover, as Plaintiffs state in their brief, the statute does not prevent someone under the age of 13 from being "dealt with as the law provides for juveniles who violate the law." [Doc. 54-1, p. 8]; *Adams*, 707 S.E.2d at 366 (Hunstein, C.J., concurring) (quoting Committee Notes to § 26–701 of the 1968 Georgia Criminal Code).

Plaintiffs rely on *Williams v. Sirmons*, an unreported case, which held that a police officer lacks probable cause to arrest a suspect when he "actually has knowledge of facts and circumstances conclusively establishing an affirmative defense." 307 F. App'x 354, 358 (11th Cir. 2009). In that case, the court held that officers lacked arguable probable cause to arrest a pregnant driver for fleeing the scene of a traffic stop where they knew she was in premature labor and that her flight was precipitated by duress or necessity. *Id.* at 389.

However, as Defendants point out, the Eleventh Circuit has carefully avoided creating binding precedent as to whether the existence of an affirmative defense and an officer's knowledge of that defense negate probable cause. *See, e.g.*, *Sada v. City of Altamonte Springs*, 434 F. App'x 845, 851 (11th Cir. 2011) ("[G]iven the absence of binding precedent holding that affirmative defenses must be considered in a probable cause

determination, we cannot say that the law regarding affirmative defenses [in *Williams v. Sirmons*] was so clearly established as to have provided fair warning to the Defendants that their actions were unconstitutional.").

Thus, Plaintiffs cannot show that Defendants violated a clearly-established constitutional right when they arrested JE without taking into consideration the affirmative defense in Ga. Code Ann. § 16-3-1, and Defendants are entitled to qualified immunity.

*c.* <u>*JE's conduct constituted a crime.*</u>

Finally, Plaintiffs argue that Defendants Clark and Walker lacked probable cause to arrest JE because he did not commit a crime. Plaintiffs rely on *KMS v. State*, 200 S.E.2d 916, 918 (Ga. Ct. App. 1973), which states, "The juvenile court is a civil court, not a criminal court, and an adjudication of delinquency is not a conviction of a crime." They also rely on the principle that probable cause is based on the elements of the crime for which a suspect is arrested. *See Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). From these two legal principles, Plaintiffs conclude that because a "crime" and a "delinquent act" are not the same and because JE would only have been prosecuted for a "delinquent act," there was no "crime" that would have established the guidelines for a probable cause determination. Plaintiffs' reasoning is flawed.

The *KMS* court went on to explain that while "[t]he juvenile court cannot find anyone guilty of a crime," it "may well find that *any act which is designated a crime under*

*Georgia law is a delinquent act when committed by a juvenile.*" *KMS*, 200 S.E.2d at 918 (emphasis added). Thus, although JE could have been found guilty of a delinquent act rather than a crime, the elements to establish probable cause would have been the same in the eyes of the juvenile court as they would have been in the eyes of a criminal court for the same offense. That is, the only difference between a delinquent act and a crime is the age of the accused, but the elements—and thus the parameters of probable cause—are the same.

In this case, Defendants Clark and Walker had probable cause to believe that JE made terroristic threats, an offense that would be a crime if committed by a person over age 13 and a delinquent act if committed by a person under age 13, and for which the elements are the same regardless of the suspect's age. The facts they knew at the time of JE's arrest clearly satisfy the elements of the crime of terroristic threats. *See* n.3. Accordingly, they had probable cause to arrest JE and are entitled to summary judgment on Count II.

**E.** **Count III: Due Process and *Miranda* Violations**

In their third cause of action, Plaintiffs allege that Defendants violated JE's pre-deprivation due process rights by questioning him without his parents present and without providing *Miranda* warnings. Defendants are entitled to qualified immunity on this claim if Plaintiffs cannot establish that Defendants violated a clearly-established constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

As to Plaintiffs' contention that Defendants violated JE's right to have a parent present while Defendants questioned him, courts, including the Eleventh Circuit, have routinely held that there is no clearly-established right for parents to be present during police questioning of a minor or for them to even be *notified* of such questioning. *See, e.g.,* *Hall v. Thomas*, 611 F.3d 1259, 1289 (11th Cir. 2010) ("Regardless of what *Alabama* law requires, there is no clearly established *federal constitutional requirement*: (1) that police officer advise juveniles, suspected of state crimes, of a right to have a parent present during questioning, or (2) that interrogation cease upon a juvenile's request for the presence of a parent or guardian.") (emphasis in original); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("[N]either federal statutory nor constitutional law requires that a juvenile's parents be notified prior to obtaining a confession."); *United States v. Guzman*, 879 F. Supp. 2d 312, 321 (E.D.N.Y. 2012) ("[T]here is no constitutional right for a juvenile to have a parent or guardian present during questioning."); *Foley v. Carlsbad Mun. Schs.*, 2011 WL 13286401, at *8 (D.N.M. Jan. 24, 2011) ("Plaintiffs do not point to any clearly established constitutional right that juveniles must have their parents present during questioning by police or school officials. . . . [T]he Tenth Circuit has never recognized such a right, and the Fourth Circuit has specifically declined to recognize any such constitutional requirement."). Thus, Defendants did not violate JE's due process rights by failing to have his parent(s) present during questioning.

Plaintiffs also claim that Defendants violated JE's due process rights by failing to properly Mirandize him. As an initial matter, noncompliance with *Miranda* does not create a cognizable claim under the Fifth Amendment or Section 1983. *Wright v. Dodd*, 438 F. App'x 805, 807 (11th Cir. 2011) (citing *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999)); *see also Chavez v. Martinez*, 538 U.S. 760, 772 (1994) ("[T]he *Miranda* exclusionary rule [is] a prophylactic measure to prevent violations of the right protected by the text of the Self–Incrimination Clause—the admission into evidence in a *criminal case* of confessions obtained through coercive custodial questioning.") (emphasis added). The Supreme Court has said, however, that an officer's improper methods for obtaining a confession can run afoul of the Fourteenth Amendment Due Process Clause in certain situations. *See Chavez*, 538 U.S. at 773. Despite Plaintiffs' contentions, this is not one of those situations.

In *Chavez*, the Supreme Court articulated a Fourteenth Amendment due process violation where officers use methods "so brutal and so offensive to human dignity that they shock the conscience." *Id.* at 774 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). But such a violation is limited to "the most egregious conduct," and "the official conduct most likely to rise to the conscience-shocking level is the conduct intended to injure in some way unjustifiable by *any* government interest." *Id.* at 774, 775. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 849 (1998)) (emphasis added). Courts in this circuit have found that not even excessive force will be conscience-shocking in every

case; it must be used "maliciously and sadistically to cause harm." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009). Other instances of conscious-shocking behavior include police officers pumping a suspect's stomach against his will, *Rochin*, 342 U.S. at 172, and a high school teacher permanently blinding a student with a heavy object, *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000).

This case simply does not rise to the level laid out in the cases cited above. There is no evidence that Defendants Clark and Walker acted maliciously or even with the intent to harm JE, or that JE was even harmed at all. His detention was brief, and all of Defendants' actions served the state government's interest in keeping schools and students safe. Therefore, JE's substantive due process claim fails, and Defendants are entitled to summary judgment on Count III.

## F.     State-Law Claims

Finally, Plaintiffs bring state-law claims against Defendants for alleged violations of Article I, Section I, Paragraph XVI of the Georgia Constitution and for false imprisonment due to their alleged violation of Ga. Code Ann. § 15-11-502.[5]

Defendants argue that they are entitled to official immunity under Georgia law. Public officials enjoy official immunity under Georgia law when they are sued "in their

---

[5] In their reply to Defendants' Motion for Summary Judgment, Plaintiffs confusingly assert that the crux of this cause of action is "whether [D]efendants violated [O.C.G.A. §] 15-11-502(a)" but go on to say that this cause of action is "not for violation of [Ga. Code Ann. § 15-11-502] but for false imprisonment." [Doc. 52, p. 16].

individual capacities for discretionary actions within the scope of their official authority performed without actual malice or actual intent to cause injury." *Rodriguez v. Kraus*, 619 S.E.2d 800, 802 (Ga. Ct. App. 2005). Actual malice is shown by more than ill will; it "must also be combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). Moreover, to prove actual intent to cause injury, a plaintiff must show that the defendant intended to harm the plaintiff, rather than simply showing that the defendant intended to do the act that resulted in the harm. *Hart v. Sirmans*, 784 S.E.2d 67, 69 (Ga. Ct. App. 2016).

Discretionary actions include police officers' investigative decisions, *Hutchinson v. Whaley*, 777 S.E.2d 251, 254 (Ga. Ct. App. 2015), as well as their decisions to arrest suspects. *Rodriguez*, 619 S.E.2d at 802. In this case, Defendants were clearly acting within their discretionary authority when they questioned and detained JE, and Plaintiff offers no proof that they did so maliciously or with the actual intent to harm her or JE. Plaintiffs' bare assertion that "there was no legitimate purpose for [Defendants'] actions" is insufficient to defeat official immunity, especially in light of the Court's decision that JE's questioning and transportation to the Upson County Sheriff's Office were justified and lawful. Accordingly, Defendants are also entitled to summary judgment on Plaintiffs' state-law claims.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 47] and **DENIES** Plaintiffs' Amended Motion for Partial Summary Judgment [Doc. 54]. Plaintiffs' Motion for Summary Judgment [Doc. 49] and Motion for Partial Summary Judgment [Doc. 53] are **DENIED AS MOOT**. Accordingly, this action is **DISMISSED**.

**SO ORDERED**, this 16th day of August, 2018.

S/Tilman E. Self, III
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**